IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| SWIFT TRANSPORTATION CO. OF ARIZONA, LLC formerly known as SWIFT TRANSPORTATION CO., INC., and LEXINGTON INSURANCE CO., <br><br>Plaintiffs, <br><br>vs. <br><br>ALFRED F. ANGULO, JR., and BARRETT AND DEACON, P.A., <br><br>Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * No. 4:10CV01516 SWW <br> * <br> * <br> * <br> * <br> * <br> * |

**Memorandum Opinion and Order**

This is a legal malpractice case. Plaintiffs allege defendants were negligent in failing to file a notice of appeal from an adverse judgment. Now before the Court are the parties' motions for summary judgment. For the reasons stated below, defendants' motion is granted.

**Background**[1]

This case arises out of a personal injury lawsuit styled *Turner v. Swift* which was filed in Drew County, Arkansas circuit court in 2005. The initial jury trial took place in 2007 and resulted in a hung jury. The case was re-tried in 2008 and resulted in a verdict for Joseph Turner in the amount of $6 million. Separate defendant Alfred F. Angulo, Jr. ("Angulo")[2] represented separate plaintiff Swift Transportation Company of Arizona, LLC ("Swift") in the underlying lawsuit. After the first trial ended in a hung jury, separate plaintiff Lexington Insurance

---

[1] Background information is set forth in Defendants' Statement of Undisputed Facts and the Plaintiffs' Response. *See* docket entries 24 & 32.

[2] At the time Angulo was retained to represent Swift, he was associated with the Laser Law Firm. Angulo later became an employee of separate defendant Barrett and Deacon.

Company ("Lexington"), excess insurance carrier for Swift, retained the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, of Atlanta, Georgia, as additional trial counsel to participate with Angulo in defending Swift in the retrial.

A judgment was entered against Swift on May 28, 2008, and Angulo prepared and timely filed a Notice of Appeal. Lexington hired the law firm of Hardin, Jesson & Terry, PLC, as additional attorneys to handle the preparation of the appeal. After all the appellate briefs were filed, the Arkansas Court of Appeals dismissed the appeal without prejudice due to lack of a final order, as there was a subrogation claim by the intervening workers' compensation carrier which was still pending in the trial court, and the Rule 54(b) certificate was found to be deficient.[3]  Attorneys for Turner and Swift's attorneys from Hardin, Jesson & Terry, PLC, communicated with each other and the trial court regarding a proposed amended judgment with changes to the Rule 54(b) certificate, and the trial court entered an order styled Amended Judgment on December 9, 2009.

The Drew County circuit court sent a file-marked copy of the Amended Judgment to Angulo at his former law firm even though he had not been practicing there for over eighteen months. The law firm forwarded a copy of the Amended Judgment to Angulo via e-mail on or about December 14, 2009. Angulo did not forward a copy of the Amended Judgment to Swift's additional attorneys, Hardin, Jesson & Terry PLC within thirty days of the entry of the Amended Judgment. No attorney for Swift filed a notice of appeal within thirty days from the file-marked date of the Amended Judgment.

---

[3]Ark.R.Civ.P. 54(b) provides that when a judgment in a case involving multiple parties or multiple claims is entered, it contain a certificate stating the reasons why a judgment that does not resolve all the claims should nonetheless be entered as a final judgment from which an appeal may be taken.

Swift filed a motion for extension of time to file a notice of appeal or, in the alternative, to vacate judgment in the Drew County Circuit Court, which was denied. Swift appealed the denial of the motion to the Arkansas Court of Appeals, and also indicated that it intended to appeal the orders of the trial court involving the merits and the Amended Judgment.

An abbreviated record was lodged in the Arkansas Court of Appeals, and the appeal proceeded there. Swift filed a motion for stay of execution and application for entry of supersedeas and approval of continuing bond as well as a motion to expedite. Turner responded to the motion and filed a motion to dismiss to which Swift responded. Swift also filed an amended motion for stay of execution and application of entry of supersedeas and approval of continuing bond on February 5, 2010. The Arkansas Court of Appeals denied Swift's motions on February 11, 2010, and denied Turner's motion to dismiss the appeal on February 24, 2010.

The Arkansas Court of Appeals docketed the appeal and set a briefing schedule. Before Swift's brief on appeal was due, Swift satisfied the underlying judgment in full. Swift then filed a motion to dismiss its appeal with prejudice, representing that all matters between the parties had been resolved by full satisfaction of the underlying judgment. The Arkansas Court of Appeals dismissed Swift's appeal with prejudice on March 17, 2010. Plaintiffs filed this action on October 18, 2010.

Now before the Court is plaintiffs' (hereafter referred to as "Swift") motion for partial summary judgment. Swift argues that it is entitled to a ruling that Swift would have prevailed on appeal if defendants had filed a timely appeal. In response, defendants filed a cross motion for summary judgment, arguing an appeal to the Arkansas Court of Appeals would have been unsuccessful and therefore, they are entitled to judgment as a matter of law. Defendants further

argue that they are entitled to summary judgment as a matter of law based on Swift's satisfaction of the underlying judgment and voluntary forfeiture of its arguments on appeal.[4]

### Discussion

Under Arkansas law, "an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of a client." *Barnes v. Everett*, 95 S.W.3d 740, 744 (Ark. 2003) (citations omitted). To prevail on their claim of attorney malpractice, Swift must show that Angulo's "conduct fell below the generally accepted standard of practice and that such conduct proximately caused ... [Swift's] damages." *Id.* To prove damages and proximate cause, Swift must show that, but for the alleged negligence of Angulo, the result in the underlying action would have been different. *Id.* This requires Swift to prove a case within a case, or in other words, Swift must prove it would have prevailed on appeal. *Id.* This Court must act as the Arkansas Court of Appeals would have acted and review the trial court's decisions under the same standard the appellate court would have used. *Southern Farm Bureau Cas. Ins. Co. v. Daggett*, 118 S.W.3d 525, 530 (Ark. 2003).

For its appeal, Swift contends that the trial court erred in denying its motion for directed verdict, and that the judgment should be reversed and the case dismissed with prejudice. In the alternative, Swift argues that because of evidentiary errors committed by the trial court, the case should be remanded for a new trial.

**1.      Sufficiency of the Evidence**

---

[4] Because the Court finds defendants are entitled to summary judgment because an appeal on the merits would have been unsuccessful, it is unnecessary to address defendants' argument regarding waiver of appeal.

Swift moved for a directed verdict at the close of Turner's case[5] and renewed its motion at the close of all the evidence.[6] Swift argues it was Turner's burden to prove that a Swift employee was operating the truck which was involved in the accident and there were no witnesses who testified that Turner saw a Swift logo on the tractor portion of the truck.

> Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not this court's place to try issues of fact; rather, this court simply reviews the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered.

*Ethyl Corp. v. Johnson*, 49 S.W.3d 644, 647 (Ark. 2001).

Turner testified that he was driving his bread truck south on Arkansas Highway 425 on the morning of November 8, 2004, when he saw an eighteen-wheeler coming head-on at him on his side of the road. He said he decided he should move to the shoulder or otherwise get out of the way. Turner's vehicle left the road and hit a culvert. He was ejected from his truck through the windshield and suffered a closed head injury as well as other injuries. Turner testified he saw the approaching truck's headlights but could not recall seeing any markings or logo on the truck.

Kimberly Irons, who lived in the area and heard about the accident, testified that when she went to the scene of the accident around 6:30 a.m., she saw the bread truck in the culvert and

---

[5] Defs.' Mot. Summ. J., Ex. 2 [doc. no. 8-4] at 5.

[6] *Id.*, Ex. 3 at 184-85.

Turner in a ditch. Irons said Turner asked her to call his wife and told Irons that a Swift truck ran him off the road. Rebecca Barnett, a paramedic who responded to the accident, testified she gave Turner oxygen and when she was riding in the back of the ambulance, Turner was mumbling and asking her about the "other truck." After they arrived at Drew County Memorial Hospital, Barnett stayed for fifteen to twenty minutes doing paperwork and heard Turner talking about a "big truck" to a nurse in the room where he was being treated. Barnett testified that when the nurse asked Turner what big truck he was talking about, Barnett heard him answer "the Swift truck." A third witness, James Gosney, Turner's brother-in-law, testified that Turner told him at the Jefferson Regional Medical Center in Pine Bluff, where Turner had been transferred, that a "Swift truck" caused the accident.

     A woman named Rebecca Pryor testified that she was standing at her kitchen window on the morning of November 8, 2004, and the sound of the traffic on Highway 425 caught her attention. She saw a number of cars and an eighteen-wheeler going by at a high rate of speed. About ten or fifteen seconds later, around 6:15 a..m, she heard a loud boom. Later in the morning she went to the accident scene and told a state trooper there what she had seen and heard and gave him her name. She told the trooper that the eighteen-wheeler she saw was a Swift truck. Although she drew a stylized "S" to show the investigator what she saw on the trailer, Pryor testified that she saw no markings on the cab or the tractor unit of the eighteen-wheeler.

     Gosney called Swift on November 12, 2004, and reported the accident. A Swift claims processor took the report from Gosney and opened a claim involving a serious loss. Swift's safety advisor, Dennis Ritchie, testified that Swift has a satellite system which it uses to track the

location of its trucks.  Its tractors or trucks have a dome on the top and a keyboard inside which allow Swift to collect satellite data.  A security analyst named Devon Daricek retrieved the data and ran the search on the Turner accident.  Daricek testified he used a 40-mile radius/80 miles diameter around the accident location.  The satellite tracking data printouts from the searched showed no Swift trucks headed northbound on Highway 425 in the area of the accident.  Ritchie testified that every seven days the raw satellite data is erased and so there is no way to go back and run a search using a different mile radius/diameter.

The jury saw a video animation which depicted the inside of the bread truck and was shot as if over the shoulder of the driver.  The animation showed an eighteen-wheeler driving straight toward the bread truck, and the approaching vehicle image includes an air foil on the roof of the tractor with the "Swift" logo clearly depicted.  Turner testified the animation accurately depicted what he saw the morning of the accident, but he said he never said he could identify any markings on the truck and does not remember telling anyone he saw a Swift truck.

Dr. Souheaver, a clinical neuropsychologist, who treats individuals with brain injuries, testified that it is possible that Turner could have learned something before his head injury and as a result of that injury not be able to recall what he knew.  He opined that if Irons, Barnett, and Gosney's statements are accurate, then their statements are reliable.

The jury also heard testimony that in response to discovery requests from Turner's attorneys, Swift said the identity of the person calling to report the accident was unknown.  In fact, Swift's initial report included Gosney's name and other identifying information, and Swift later disclosed Gosney's name to Turner's attorneys, after they told Swift that they knew Gosney had called Swift.  Also, the jury heard testimony that at first Swift left blank its response to

Turner's request to provide all tracking data on the trucks operating in or around Drew and Lincoln counties in Arkansas on November 8, 2004.  A few weeks later, Swift responded that the satellite data had not been preserved.  Later, after Turner's attorney's informed Swift that they learned Gosney had called Swift,  Swift produced a printout showing that the search it ran showed information on five trucks in the general area, none of which belonged to Swift.

The Court finds, viewing the evidence in the light most favorable to Turner, and finding no error in the trial court's evidentiary rulings or instructions, that there is sufficient evidence to sustain the jury's verdict.

**2.     Evidentiary Issues**

Swift argues the trial court erred in admitting evidence of discovery disputes, hearsay evidence, expert testimony, and a video animation.  Swift also argues the evidence did not support a spoliation instruction.  The Court reviews evidentiary rulings for abuse of discretion. *LaTour v. City of Fayetteville,* 442 F.3d 1094, 1096 (8th Cir. 2006).; *Greem v. Alpharma, Inc.*, 284 S.W.3d 29 (Ark. 2008); *Hopkins v. Arkansas Dept of Human Servs.*, 83 S.W.3d 418 (Ark. Ct. App. 2002).

**Hearsay Statements**

The trial court admitted the statements of Irons, Barrett, and Gosney under the excited utterance and present sense impression exceptions to the hearsay rule.  Swift argues that the statements allegedly made to Barrett and Gosney are too remote in time to fit the excited utterance exception and none of the witnesses' statements fall under the present sense impression exception.  Swift argues the alleged statements made to Irons are inadmissible as excited utterances because they are inherently unreliable.

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ark.R.Evid. 803(2). Present sense impressions, defined as statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," are not excluded by the hearsay rule. Ark. R.Evid. 803(1).

The statements made to Barrett were in the ambulance and at the hospital after she had given Turner oxygen to help him regain his senses. The ambulance statement occurred about forty-five minutes after witness Pryor claims she heard a loud boom on the highway; the statement Barrett says she overheard at the hospital was made over an hour after the estimated time of the accident. The statement Turner made to Gosney was made several hours after the accident. Swift argues that even though Turner's alleged statement to Irons occurred at the accident scene, he also told Irons he was twenty-one years old (he was in fact fifty-six year old) and that he wanted to go deer hunting. Barnett testified she had to give Turner oxygen to clear his head and that he was confused and disoriented. Swift argues the statement about a Swift truck made to Irons was, therefore, inherently unreliable.

The Court finds the trial court did not abuse his discretion by allowing the hearsay statements. They are all arguably statements made while Turner was under the stress or excitement caused by the accident and further represent Turner's explanation of the accident immediately thereafter.

**Expert Testimony**

Swift asserts the trial judge abused his discretion by admitting the testimony of Dr. Souheaver, arguing that

9

> [Dr. Souheaver's] opinion is simply that, based on the fact that Turner made statements to three separate individuals at three different times, then his statements were reliable.  Dr. Souheaver opined that Turner learned something before his brain injury which he cannot now recall, but explained that the process of memory is one of learning information and having the ability to recall it.  The contrast to this is 'if you never learned something you're never going to recall it.'  Dr. Souheaver further admitted that one explanation for Turner being unable to recall that a Swift truck was involved in the accident is the possibility that Turner never learned this information in the first instance.[7]

Swift argues that in order for Dr. Souheaver to render an opinion, he had to assume that the three witnesses were credible, and therefore, his expert testimony improperly invaded the jury's task to determine the credibility of witnesses.  *See Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998).  The Court finds there was no abuse of discretion in admitting Dr. Souheaver's testimony that it is possible for someone with a traumatic brain injury like Turner had to have known something but then later be unable to recall it.

**Computer Animation**

Swift argues there was no evidentiary support or foundation for the animation, it was based on speculation about what happened, and tainted the jury's perception of the accident scene.

Turner testified the truck that ran him off the road was coming straight at him, that he could see its headlights.  Witnesses testified Turner said it was a Swift truck. The trial judge recognized that the only way Turner could have identified the truck as a Swift truck is if he saw the logo on the wind hood or air foil on the top of the cab.  The animation also depicted what Pryor saw from her kitchen window the morning of the accident.  She testified, outside the

---

[7]Pls.' Mot. Part. Summ. J, Ex. 2 [doc. no. 8-4] at 108.

hearing of the jury, that the animation was accurate, although she said her view of the highway was actually clearer than the animation showed.[8]

The Court finds the trial judge did not abuse his discretion in admitting the computer generated animation as it was relevant, based on testimony of a number of witnesses as well as other primary evidence, and assisted the jury in understanding the testimony.

**Evidence About Discovery Issues**

The trial judge allowed testimony and argument about issues that had arisen in discovery, including Turner's complaint that Swift improperly failed to disclose the fact that Gosney had called Swift to report the accident. As set forth previously, Swift originally told Turner's counsel that an unidentified person had reported the accident, then later acknowledged that Gosney made the call. Swift argues the evidence and argument about this dispute is irrelevant because Turner suffered no prejudice. In response, Turner argues that Swift's major defense in the case was that the satellite data showed no Swift trucks in the area of the accident. However, as noted earlier and discussed further below, Swift initially said the satellite data was not preserved and then later said the report had been found. Turner challenged Swift's credibility on the satellite data issue, and Swift's conduct regarding the identity of the caller went to Turner's argument that Swift knew of the accident within seven days and had a duty to preserve the electronic satellite data. In reply, Swift complains that the trial judge allowed Turner to call Ritchie in Turner's case in chief, before Swift offered the satellite data into evidence, and repeats its argument that Turner suffered no demonstrable harm from Swift's mistakes and misstatements that occurred during discovery.

---

[8]Pls.' Mot. Part. Summ. J., Ex. 2 [doc. no. 8-1] at 214.

The record is clear that the trial judge found that the testimony and argument went to the credibility of the evidence.  The Court finds he did not abuse his discretion in allowing the evidence of discovery issues.

**Spoliation Instruction**

Whether the trial court erred in giving a spoliation instruction is reviewed for abuse of discretion.  *Tomlin v. Wal-Mart Stores, Inc.*, 100 S.W.3d 57, 64 (Ark.Ct.App. 2003).  A party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction.  *Barnes v. Everett*, 95 S.W.3d 740, 748 (Ark. 2003).[9]

Considering the totality of the circumstances, the Court finds no abuse of discretion. The testimony shows that Swift knew of the accident within seven days, retrieved the satellite data, and produced a satellite data printout.  Swift then allowed the raw data to be erased in the normal course of business, despite knowing of a claim pending involving a serious accident.  At first, Swift left blank its response from Turner for any satellite information involving its trucks on the date of the accident.  Later, Swift responded that the satellite data was not preserved. Then five months later, it produced the satellite data printouts which showed none of its trucks in the area.

Swift's safety director, Ritchie, testified a paralegal had misfiled the printouts, which

---

[9]He instructed the jury: "If you find that Swift intentionally destroyed, lost, or suppressed satellite data with knowledge that the data may be material to a potential claim or defense, you may draw the inference that the evidence would have been favorable to Joe Turner's claim or unfavorable to Swift's defense.  When I use the term material, I mean evidence that would be a substantial factor in evaluating the merit of a claim or defense in this case." Defs.' Cross Mot. Summ.J., Ex. A-7.

caused a delay in their disclosure. The paralegal testified that she did not mistakenly misplace the printouts and that the printouts were not in the claims file or serious loss file from May 2005 to October 2005. She testified that the data could have been misfiled, and that a manager, who was Swift's representative at counsel table, was the person who found the data.[10] Questions of credibility about the printouts plus the fact that the raw data was not preserved, even though Swift was on notice of a serious claim, support the trial judge's decision to instruct the jury on spoliation.

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [docket entry 22] is granted, and plaintiffs' motion for partial summary judgment [docket entry 8] is denied. A separate judgment will be entered.

DATED this 5th day of January, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[10] Pls.' Mot. Part. Summ. J., Ex. 2 [doc. no. 8-3] at 137-140.